IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Erie Division)

BILL E. COOK,

       Plaintiff,

vs.                                Civil Action No.:  07-172 E

BROOKS SPORTS, Inc.,

       Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF MATERIAL FACTS**

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted in part and denied in part.  Admitted that Mr. Cook requested and was allowed to work in the Pittsburgh market.  Denied that Mr. Cook's wife's family resided in Pittsburgh.  Mr. Cook's wife's family lived in Erie.  (Cook at page 144, Attached as Exhibit 1). Mr. Cook was initially hired in the Cincinnati market, along with John Fendel, the Sole Tech for Indiana.  (Cook at page 14, Attached as Exhibit 1; Fendel at page 9, Attached as Exhibit 4).  Sole Techs went to Finish Line stores helped sell Brooks product in these stores, and helped train store employees by offering information clinics.  (Cook at page 77, Attached as Exhibit 1).  In 2002, Brooks decided to develop the Pittsburgh market.  (Cook at page 14, Attached as Exhibit 1).  Mr. Cook requested the transfer from the Cincinnati market to the Pittsburgh market because he wanted to conquer a new territory and try to build a new market.  (Cook at pages 14, 47, and

1

144, Attached as Exhibit 1). He was always "willing to jump around, new scenery, new places to go." (Cook at page 140, Attached as Exhibit 1).

7.      Denied. The cited deposition page does not state said fact. The cited deposition page states that Finish Line decided which store locations would have a Sole-Tech assigned to go into the store. (Cook at page 80, Attached as Exhibit 1). Furthermore, the number of Finish Line stores carrying the Brooks product remained the same after Mr. Cook's termination as it had been before his termination. (Waltner at pages 13, 14, Attached as Exhibit 2; Cook at page 121, Attached as Exhibit 1).

8.      Denied. The number of Finish Line stores carrying the Brooks product in the Pittsburgh area prior to Mr. Cook's termination did not decrease after his termination. (Waltner at pages 13 and 14, Attached as Exhibit 2; Cook at page 121, Attached as Exhibit 1).

9.      Denied. See ¶ 8.

10.     Denied. See ¶ 8.

11.     Admitted in part and denied in part. Admitted that as of August 2004, almost one year before Mr. Cook's termination, Brooks' Sole Techs each carried an average of 39.4 total accounts with an average of 19 Finish Line stores. Denied that Droke Decl. Exh. B reflects the above. Exh. B is the August 20, 2001 letter extending an offer of employment to Mr. Cook and does not state what defendant alleges. (Droke Decl. Exh. B).

12.     Admitted in part and denied in part. Admitted that Mr. Cook's region had more Finish Line stores than non-Finish Line stores. Denied that the page of Sheridan's deposition cited by defendant states this. Furthermore, other Finish Line and Dick's Sporting Goods stores had been added to Scott Waltner's territory (Ohio) prior to Mr. Cook's termination, although these stores were closer to Mr. Cook's territory. (Cook at pages 107, 135, Attached as Exhibit

1).  Mr. Cook already had an Ohio store in his territory, specifically, St. Clairsville, Ohio.  (Cook at page 136, Attached as Exhibit 1).  Additionally, stores in Buffalo, New York were assigned to Mike Hillebrand, who was the Sole Tech for the Baltimore, Maryland territory.  (Cook at page 137, Attached as Exhibit 1).  These stores were handed out during the time period of Mr. Cook's illness.  (Cook at page 138, Attached as Exhibit 1).  Mr. Cook requested these stores at the time; however, Marc Misciewicz would not assign them to Mr. Cook, even though Mr. Cook had more experience than most of the other Sole Techs.  (Cook at page 138, Attached as Exhibit 1).  When Mr. Cook requested the Ohio and Buffalo stores during the time he was sick, he was told by Misciewicz to worry about the Pittsburgh market.  (Cook at page 138, Attached as Exhibit 1).  Mr. Cook was "trying to worry about the Pittsburgh market by getting more stores."  (Cook at page 138, Attached as Exhibit 1).  Also during the time period of Mr. Cook's hospitalization, Hillebrand was transferred from Florida and promoted to the Dick's position.  (Cook at page 139, Attached as Exhibit 1).  Mr. Cook would have been happy to move to Florida, however, the position was filled by Carson Caprera.  (Cook at page 139, Attached as Exhibit 1; Fendel at page 8, Attached as Exhibit 4).  Mr. Cook had requested the Florida position but Misciewicz denied the transfer.  (Cook at pages 140, 143, Attached as Exhibit 1).  Mr. Cook had also previously requested the Carolinas position when Brian Leonard left the company, but was denied the transfer.  (Cook at page 140, Attached as Exhibit 1).

13.     Admitted in part and denied in part.  Admitted that Mr. Cook had between 17 and 19 accounts in the Pittsburgh market, including 13 Finish Line stores and 4 Dick's Sporting Goods stores.  Denied that Droke Decl. Exh. D reflects states what defendant alleges, as Exh. D only contains emails regarding the compassionate leave program and does not address either Mr. Cook's Finish Line or Dick's Sporting Goods accounts.  Furthermore, see ¶ 12.  Additionally,

Mr. Cook's territory had higher sales than the Ohio market, even though Ohio had more stores than Pittsburgh. (Cook at pages 87, 88, Attached as Exhibit 1). Mr. Cook's territory also had higher sales than the Florida market. (Cook at page 88, Attached as Exhibit 1).

14.     Admitted in part and denied in part. Admitted that other territories had a higher average of non-Finish Line accounts. Denied that Droke Decl. Exh. E reflects any of this information, as Exh. E is personnel documentation regarding Mr. Cook's commission and bonuses. Furthermore, see ¶ 12.

15.     Denied. Brooks terminated Mr. Cook due to his disability. Mr. Cook and John Fendel were hired as the first Sole Techs in 2001 to begin the Sole Tech program by establishing the "job description" and job duties for a Sole Tech. (Cook at page 77, Attached as Exhibit 1). At that time, Mr. Cook's territory was Cincinnati. (Cook at page 14, Attached as Exhibit 1). Mr. Cook moved to Pittsburgh to "conquer a new territory" in approximately September of 2002. (Cook at pages 14, 47, and 144, Attached as Exhibit 1; Waltner at pages 5 and 10, Attached as Exhibit 2). When Mr. Cook moved to Pittsburgh, Scott Waltner was hired as the Cincinnati Sole Tech and was trained by Mr. Cook. (Cook at page 158, Attached as Exhibit 1; Waltner at page 6, Attached as Exhibit 2; Misciewicz at page 9, Attached as Exhibit 5). Eventually, two other territories were added in the Carolinas and Florida. (Misciewicz at page 11, Attached as Exhibit 5). Mike Hillebrand was hired for the Florida market and Brian Leonard was hired for the Carolinas market. (Misciewicz at page 9, Attached as Exhibit 5). Matt Weber took over the Carolinas market when Leonard changed jobs. (Misciewicz at page 11, Attached as Exhibit 5). Jonathan Baird took over the Indiana market when John Fendel took another Brooks position in Boston. (Cook at page 148, Attached as Exhibit 1; Fendel at page 6, Attached as Exhibit 4). During Mr. Cook's hospitalization and medical leave in early 2005, stores were added to the

Ohio territory, even though they were closer to Mr. Cook's territory. (Cook at page 135, Attached as Exhibit 1). Also during Mr. Cook's hospitalization, Mike Hillebrand moved to Baltimore to become the national account lead for Dick's Sporting Goods. (Cook at page 143, Attached as Exhibit 1; Misciewicz at page 12, Attached as Exhibit 5). Despite having more experience than Hillebrand, Mr. Cook was not offered this position nor was he even aware it was available. (Cook at pages 138 and 143, Attached as Exhibit 1) Carson Caprera was hired to take over the Florida territory when Hillebrand was transferred. (Cook at page 139, Attached as Exhibit 1; Misciewicz at page 12, Attached as Exhibit 5). Stores were also added to the Buffalo territory during the time of Mr. Cook's medical leave, however, they were given to Hillebrand, despite being closer to the Pittsburgh territory. (Cook at page 137, Attached as Exhibit 1). Mr. Cook had asked to have the new stores in Ohio and Buffalo added to the Pittsburgh territory and this request was denied by Misciewicz. (Cook at pages 106 and 138, Attached as Exhibit 1). Mr. Cook was not offered the Florida territory when Hillebrand transferred, although he had previously asked Misciewicz whether he could take over either the Florida or Carolinas territory. (Cook at pages 139, 140, Attached as Exhibit 1; Misciewicz at page 12, Attached as Exhibit 5). About a month prior to his termination, there had been a sales meeting in Seattle in which there were talks of the Sole Tech program increasing from 150 to 300 stores. (Cook at pages 105, 131, Attached as Exhibit 1). Mr. Cook returned to work full-time in May of 2005 and was terminated in June of 2005. (Cook at Exh. 2, Attached as Exhibit 1).

16.     Admitted.

17.     Admitted.

18.     Admitted in part and denied in part.  Admitted that Brooks paid Mr. Cook his wages, bonuses and commissions due, in addition to a severance.  Denied that Mr. Cook testified that he received a six week severance pay.  (Cook at pages 49, 127, Attached as Exhibit 1).

19.     Admitted in part and denied in part.  Admitted that Mr. Cook has Still's Disease. Denied that the fact that he has Still's Disease is the basis for his discrimination claim.  See ¶¶ 12, 13, and 15.   Denied that the cited deposition pages states what defendant contends. Furthermore, defendant's statement is an argument, not a statement of fact.

20.     Denied.  As evident from Plaintiff's Answers to Defendant's First Interrogatories No. 14, Plaintiff objected to said interrogatory as vague and overbroad.   Furthermore, defendant's statement is an argument, not a statement of fact.

21.     Denied.  As evident from Plaintiff's Answers to Defendant's First Interrogatories No. 14, Plaintiff objected to said interrogatory as vague and overbroad.   Furthermore, defendant's statement is an argument, not a statement of fact.

22.     Admitted.

23.     Admitted in part and denied in part.  Admitted that Mr. Cook was open about having rheumatoid arthritis during his initial interview and throughout his employment with Brooks.  (Cook at pages 67-69, 71 and 73-76, Attached as Exhibit 1).  His interest in running had been piqued when he initially went into remission in childhood.  (Cook at pages 68-69, Attached as Exhibit 1; Cook Medical Records, Attached as Exhibit 3).  Denied to the extent that Mr. Cook did not know he had Still's Disease throughout his employment, as he was not diagnosed until his flare-up in December of 2004.  (Cook at page 74, Attached as Exhibit 1).

24.     Admitted.

25.     Admitted.

26. Admitted.

27. Admitted.

28. Denied. During Mr. Cook's hospitalizations and time off of work, he still telephoned and emailed the stores in his territory, sometimes from his hospital bed. (Cook at page 103, 104, Attached as Exhibit 1). During this time period, Mr. Cook continued to meet all his goals, gained in percentage of sales, and his sales were higher than the Cincinnati and Florida markets. (Cook at page 87, 88, Attached as Exhibit 1; Fendel at page 9, 10, Attached as Exhibit 4; Sheridan at page 14, Attached as Exhibit 7). This is why both Fendel and Waltner were shocked when they heard Mr. Cook was being terminated. (Fendel at page 10, Attached as Exhibit 4; Waltner at page 15, Attached as Exhibit 2). There had been no talk of downsizing and no other positions were eliminated (Waltner at page, 12, 16, Attached as Exhibit 2). No other Sole Tech positions were eliminated. (Waltner at page 12, Attached as Exhibit 2). Sales had also been down in Ohio, and Waltner was not eliminated (Walter at page 12, Attached as Exhibit 2).

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38.	Admitted.

39.	Denied.  Fendel informed Mr. Cook about the marketing position in Boston, Massachusetts, but discouraged Mr. Cook was pursuing it.  (Fendel at page 12, Attached as Exhibit 4).  Furthermore, Mr. Cook was under the impression that this position would require him to go running with the store owners, and he was physically unfit to do so.  (Cook at page 146, Attached as Exhibit 1).  Fendel informed Mr. Cook that there may be an apparel position, but only to the extent that it might be an open position.  (Fendel at pages 21 and 22, Attached as Exhibit 4).  Fendel did not offer Mr. Cook either position, and did not know the details of the apparel position.  (Fendel at pages 12, 21, 22 and 24, Attached as Exhibit 4).

40.	Admitted in part and denied in part.  Admitted that John Fendel forwarded to Mr. Cook via email job openings he had cut and pasted from "industry emails" months after Mr. Cook was terminated.  (Fendel at pages 25, 28 and 29, Attached as Exhibit 4).  Denied that Fendel sent any emails regarding contacts at Nike, Converse, Adidas or any other athletic shoe and apparel company.  (Fendel at Exh. 2, Attached as Exhibit 4).  Mr. Cook did not believe he was physically fit for the positions.  (Cook at page 169, Attached as Exhibit 1).  Mr. Cook did not receive one of the emails as his email address had changed.  (Cook at page 170, Attached as Exhibit 1).  Fendel did not really even look at the positions he forwarded to Mr. Cook.  (Fendel at page 29, Attached as Exhibit 4).

41.	Admitted.

42.	Admitted.

43.	Denied.  Misiewicz had mentioned to Mr. Cook that there might be something that could come up at Russell Corporation, but Mr. Cook did not hear anything regarding this from Misiewicz after this passing mention.  (Cook at page 57, Attached as Exhibit 1).

44.     Denied.  Mr. Cook recalls applying for jobs after his termination from Brooks, however cannot recall what any of the specific jobs were.  (Cook at page 29, 32, 42, Attached as Exhibit 1).  Furthermore, after Mr. Cook's termination from Brooks, he was employed part-time in sales at Finish Line.  (Cook at page 26, Attached as Exhibit 1).

45.     Admitted.

46.     Admitted.

47.     Denied.  Mr. Cook quit his job with Finish Line around January 1, 2006 as it conflicted with his wife's work schedule, and it was too hard to work around each other.  (Cook at pages 26 and 27, Attached as Exhibit 1).  As her job provided more income, Mr. Cook stayed home to care for the children.  (Cook at page 27, Attached as Exhibit 1).

48.     Admitted.

49.     Admitted in part and denied in part.  Admitted that Mr. Cook did not hold another job until August of 2007 when he began working for First Student.  Denied that the cited deposition testimony states Mr. Cook does not recall specifically applying for another position.  However, Mr. Cook stated that during the time period of January 2006 through August 2007, he applied for some jobs, but does not recall what the jobs were.  (Cook at page 29, 32, 42, Attached as Exhibit 1).

50.     Admitted.

51.     Denied.  Mr. Cook recalls applying for jobs after his termination from Brooks.  (Cook at page 29, 32, 42, Attached as Exhibit 1).

Respectfully submitted,

ROBERT PEIRCE & ASSOCIATES, INC.

/s/ Gregory G. Paul
GREGORY G. PAUL, ESQUIRE
PA ID Number:  83334
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
(412) 281-7229
(412) 281-4229 (facsimile)
gpaul@peircelaw.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to Defendant's Statement of Material Facts has been served via the Court's E-Filing System to the following counsel of record:

Jennifer C. Berry, Esquire
DORSEY & WHITNEY, LLP
U.S. Bank Centre
1420 Fifth Avenue
Suite 3400
Seattle, WA  98101-4010


this 18th day of June, 2008.


/s/ Gregory G. Paul
GREGORY G. PAUL, ESQUIRE
Attorney for Plaintiff